714

adhered to against all evidence and argument to contrary, and which cannot be accounted for on any reasonable hypothesis. In re Nigro's Estate, 243 Cal. App.2d 152, 52 Cal.Rptr. 128, 133.

**Insanity.** The term is a social and legal term rather than a medical one, and indicates a condition which renders the affected person unfit to enjoy liberty of action because of the unreliability of his behavior with concomitant danger to himself and others. The term is more or less synonymous with mental illness or psychosis. In law, the term is used to denote that degree of mental illness which negates the individual's legal responsibility or capacity.

### Insanity as Defense to Crime

There are various tests used by the courts to determine criminal responsibility, or lack thereof, of a defendant who asserts the defense that he or she was insane at the time of the crime. The test as provided in Section 4.01 of the Model Penal Code is as follows: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law." This test, as defined by the American Law Institute, has been adopted (sometimes with slight modifications) by a number of states and also in the various Federal Courts of Appeal.

If a defendant intends to rely upon the defense of insanity at the time of the alleged crime, he is required to notify the attorney for the government of such intention. Fed.R.Crim.P. 12.2.

See also Automatism; Diminished responsibility doctrine; Durham rule; Irresistible impulse; M'Naghten Rule; and Right and wrong test, for various other tests used by courts to determine criminal responsibility of defendant who asserts insanity defense. See also Competency; Incompetency; Insane delusion; Lucid interval; Lunacy; Melancholia; Sanity hearing; Substantial capacity; Uncontrollable impulse.

### Insanity as Affecting Capacity

Capacity to make a will includes an intelligent understanding of the testator's property, its extent and items, and of the nature of the act he is about to perform, together with a clear understanding and purpose as to the manner of its distribution and the persons who are to receive it. Lacking these, the testator is not mentally competent. The presence of insane delusions is not inconsistent with testamentary capacity, if they are of such a nature that they cannot reasonably be supposed to have affected the dispositions made by the will; and the same is true of the various forms of monomania and of all kinds of eccentricity and personal idiosyncrasy. But imbecility, senile dementia, and all forms of systematized mania which affect the understanding and judgment generally disable the person from making a valid will. To constitute "senile dementia," incapacitating one to make a will, there must be such a failure of the mind as to deprive the testator of intelligent action. See also **Capacity.**

715

As a ground for voiding or annulling a contract or conveyance, insanity does not mean a total deprivation of reason, but an inability, from defect of perception, memory, and judgment, to do the act in question or to understand its nature and consequences. The insanity must have entered into and induced the particular contract or conveyance; it must appear that it was not the act of the free and untrammeled mind, and that on account of the diseased condition of the mind the person entered into a contract or made a conveyance which he would not have made if he had been in the possession of his reason.

Most state statutes provide for annulment of a marriage because of insanity. Insanity sufficient to justify the annulment of a marriage means such a want of understanding at the time of the marriage as to render the party incapable of assenting to the contract of marriage. Also, under most state statutes, insanity, if sufficient in degree and/or duration, constitutes a ground for divorce. In general, the same degree of mental capacity which enables a person to make a valid deed or will is sufficient to enable him to marry.

As a ground for restraining the personal liberty of the person (*i.e.* commitment), it may be said in general that the form of insanity from which he suffers should be such as to make his going at large a source of danger to himself or to others, though this matter is largely regulated by statute, and in many places the law permits the commitment of persons whose insanity does not manifest itself in homicidal or other destructive forms of mania, but who are incapable of caring for themselves and their property or who are simply fit subjects for treatment in hospitals and other institutions specially designed for the care of such patients. See **Commitment.**

To constitute insanity such as will authorize the appointment of a guardian or conservator, there must be such a deprivation of reason and judgment as to render him incapable of understanding and acting with discretion in the ordinary affairs of life; a want of sufficient mental capacity to transact ordinary business and to take care of and manage his property and affairs.

Insanity as a plea or proceeding to avoid the effect of the statute of limitations means practically the same thing as in relation to the appointment of a guardian. On the one hand, it does not require a total deprivation of reason or absence of understanding. On the other hand, it does not include mere weakness of mind short of imbecility. It means such a degree of derangement as renders the subject incapable of understanding the nature of the particular affair and his rights and remedies in regard to it and incapable of taking discreet and intelligent action. The time of sanity required in order to allow the statute to begin to run is such as will enable the party to examine his affairs and institute an action, and is for the jury.

There are a few other legal rights or relations into which the question of insanity enters, such as the capacity of a witness or of a voter; but they are governed by the same general principles. The test is capacity to understand and appreciate the nature of the particular act and to exercise intelligence in its performance. A witness must understand the nature and purpose of an oath and have enough intelligence and memory to relate correctly the facts within his

## Rule 12.1

### 2002 Amendments

The language of Rule 12.1 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.

Current Rules 12.1(d) and 12.1(e) have been switched in the amended rule to improve the organization of the rule.

Finally, the amended rule includes a new requirement that in providing the names and addresses of alibi and any rebuttal witnesses, the parties must also provide the phone numbers of those witnesses. *See* Rule 12.1(a)(2), Rule 12.1(b)(1), and Rule 12.1(c). The Committee believed that requiring such information would facilitate locating and interviewing those witnesses.

### HISTORICAL NOTES

#### Effective and Applicability Provisions

1975 Acts. This rule, and the amendments of this rule made by section 3 of Pub.L. 94-64, effective Dec. 1, 1975, pursuant to section 2 of Pub.L. 94-64.

## Rule 12.2. Notice of an Insanity Defense; Mental Examination

(a) **Notice of an Insanity Defense.** A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk. A defendant who fails to do so cannot rely on an insanity defense. The court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.

(b) **Notice of Expert Evidence of a Mental Condition.** If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

(c) **Mental Examination.**

(1) **Authority to Order an Examination; Procedures.**

(A) The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241.

(B) If the defendant provides notice under Rule 12.2(a), the court must, upon the government's motion, order the defendant to be examined under 18 U.S.C. § 4242. If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.

(2) **Disclosing Results and Reports of Capital Sentencing Examination.** The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

(3) **Disclosing Results and Reports of the Defendant's Expert Examination.** After disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence.

(4) **Inadmissibility of a Defendant's Statements.** No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:

(A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or

(B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

(d) **Failure to Comply.** If the defendant fails to give notice under Rule 12.2(b) or does not submit to an examination when ordered under Rule 12.2(c), the court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt or the issue of punishment in a capital case.

(e) **Inadmissibility of Withdrawn Intention.** Evidence of an intention as to which notice was given under Rule 12.2(a) or (b), later withdrawn, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention.

(Added Apr. 22, 1974, eff. Dec. 1, 1975, and amended July 31, 1975, Pub.L. 94-64, § 3(14), 89 Stat. 373; Apr. 28, 1983, eff. Aug. 1, 1983; Oct. 12, 1984, Pub.L. 98-473, Title II, § 404, 98 Stat. 2067; Oct. 30, 1984, Pub.L. 98-596, § 11(a), (b), 98 Stat. 3138; Apr. 29, 1985, eff. Aug. 1, 1985; Nov. 10, 1986, Pub.L. 99-646, § 24, 100 Stat. 3597; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 29, 2002, eff. Dec. 1, 2002.)

## Rule 12.2

### ADVISORY COMMITTEE NOTES

Rule 12.2 is designed to require a defendant to give notice prior to trial of his intention (1) to rely upon the defense of insanity or (2) to introduce expert testimony of mental disease or defect on the theory that such mental condition is inconsistent with the mental state required for the offense charged. This rule does not deal with the issue of mental competency to stand trial.

The objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony. Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice.

A requirement that the defendant give notice of his intention to rely upon the defense of insanity was proposed by the Advisory Committee in the "Second Preliminary Draft of Proposed Amendments (March 1964), rule 12.1, p. 7. The objective of the 1964 proposal was explained in a brief Advisory Committee Note:

Under existing procedure although insanity is a defense, once it is raised the burden to prove sanity beyond a reasonable doubt rests with the government. *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). This rule requires pretrial notice to the government of an insanity defense, thus permitting it to prepare to meet the issue. Furthermore, in *Lynch v. Overholser*, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962), the Supreme Court held that, at least in the face of a mandatory commitment statute, the defendant had a right to determine whether or not to raise the issue of insanity. The rule gives the defendant a method of raising the issue and precludes any problem of deciding whether or not the defendant relied on insanity.

The Standing Committee on Rules of Practice and Procedure decided not to recommend the proposed Notice of Insanity rule to the Supreme Court. Reasons were not given.

Requiring advance notice of the defense of insanity is commonly recommended as a desirable procedure. The Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 1, p. 254 (1970), state in part:

It is recommended that procedural reform provide for advance notice that evidence of mental disease or defect will be relied upon in defense. . . .

Requiring advance notice is proposed also by the American Law Institute's Model Penal Code, § 4.03 (P.O.D.1962). The commentary in Tentative Draft No. 4 at 193-194 (1955) indicates that, as of that time, six states required pretrial notice and an additional eight states required that the defense of insanity be specially pleaded.

For recent state statutes see N.Y. CPL § 250.10 (McKinney's Consol.Laws, c. 11-A, 1971) enacted in 1970 which provides that no evidence by a defendant of a mental disease negativing criminal responsibility shall be allowed unless defendant has served notice on the prosecutor of his intention to rely upon such defense. See also New Jersey Penal Code (Final Report of the New Jersey Criminal Law Revision Commission, Oct. 1971) § 2c:4-3; New Jersey Court Rule 3:12; *State v. Whitlow*, 45 N.J. 3, 22 n. 3, 210 A.2d 763 (1965), holding the requirement of notice to be both appropriate and not in violation of the privilege against self-incrimination.

## ARRAIGNMENT

Subdivision (a) deals with notice of the "defense of insanity." In this context the term insanity has a well-understood meaning. See, e.g., Tydings, A Federal Verdict of Not Guilty by Reason of Insanity and a Subsequent Commitment Procedure, 27 Md.L.Rev. 131 (1967). Precisely how the defense of insanity is phrased does, however, differ somewhat from circuit to circuit. See Study Draft of a New Federal Criminal Code, § 503 Comment at 37 (USGPO 1970). For a more extensive discussion of present law, see Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 1, pp. 229-247 (USGPO 1970). The National Commission recommends the adoption of a single test patterned after the proposal of the American Law Institute's Model Penal Code. The proposed definition provides in part:

In any prosecution for an offense lack of criminal responsibility by reason of mental disease or defect is a defense.

[Study Draft of a New Federal Criminal Code § 503 at 36-37.]

Should the proposal of the National Commission be adopted by the Congress, the language of subdivision (a) probably ought to be changed to read "defense of lack of criminal responsibility by reason of mental disease or defect" rather than "defense of insanity."

Subdivision (b) is intended to deal with the issue of expert testimony bearing upon the issue of whether the defendant had the "mental state required for the offense charged."

There is some disagreement as to whether it is proper to introduce evidence of mental disease or defect bearing not upon the defense of insanity, but rather upon the existence of the mental state required by the offense charged. The American Law Institute's Model Penal Code takes the position that such evidence is admissible (§ 4.02(1) (P.O.D. 1962)). See also *People v. Gorshen*, 51 Cal.2d 716, 336 P.2d 492 (1959).

The federal cases reach conflicting conclusions. See *Rhodes v. United States*, 282 F.2d 59, 62 (4th Cir.1960):

The proper way would have been to ask the witness to describe the defendant's mental condition and symptoms, his pathological beliefs and motivations, if he was thus afflicted, and to explain how these influenced or could have influenced his behavior, particularly his mental capacity knowingly to make the false statement charged, or knowingly to forge the signatures * * *.

Compare *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946).

Subdivision (b) does not attempt to decide when expert testimony is admissible on the issue of the requisite mental state. It provides only that the defendant must give pretrial notice when he intends to introduce such evidence. The purpose is to prevent the need for a continuance when such evidence is offered without prior notice. The problem of unnecessary delay has arisen in jurisdictions which do not require prior notice of an intention to use expert testimony on the issue of mental state. Referring to this, the California Special Commission on Insanity and Criminal Offenders, First Report 30 (1962) said:

The abuses of the present system are great. Under a plea of "not guilty" without any notice to the people that the defense of insanity will be relied upon, defendant has been able to raise the defense upon the trial of the issue as to whether he committed the offense charged.

As an example of the delay occasioned by the failure to heretofore require a pretrial notice by the defendant, see *United States v. Albright*, 388 F.2d 719 (4th Cir.1968), where a jury trial was recessed for 23 days to permit a psychiatric examination by the prosecution when the defendant injected a surprise defense of mental competency.

Subdivision (c) gives the court the authority to order the defendant to submit to a psychiatric examination by a psychiatrist designated by the court. A similar provision is found in ALI, Model Penal Code § 4.05(l) (P.O.D.1962). This is a common provision of state law, the constitutionality of which has been sustained. Authorities are collected in ALI, Model Penal Code, pp. 195-196 Tent. Draft No. 4, 1956). For a recent proposal, see the New Jersey Penal Code § 2c: 4-5 (Final Report of the New Jersey Criminal Law Revision Commission, Oct. 1971) authorizing appointment of "at least one qualified psychiatrist to examine and report upon the mental condition of the defendant." Any issue of self-incrimination which might arise can be dealt with by the court as, for example, by a bifurcated trial which deals separately with the issues of guilt and of mental responsibility. For statutory authority to appoint a psychiatrist with respect to competency to stand trial, see 18 U.S.C. § 4244.

Subdivision (d) confers authority on the court to exclude expert testimony in behalf of a defendant who has failed to give notice under subdivision (b) or who refuses to be examined by a court-appointed psychiatrist under subdivision (c). See *State v. Whitlow*, 45 N.J. 3, 23, 210 A.2d 763 (1965), which indicates that it is proper to limit or exclude testimony by a defense psychiatrist whenever defendant refuses to be examined.

### 1975 Enactment

A. Amendments Proposed by the Supreme Court. Rule 12.2 is a new rule that deals with defense based upon mental condition. It provides that: (1) The defendant must notify the prosecution in writing of his intention to rely upon the defense of insanity. If the defendant fails to comply, "insanity may not be raised as a defense." (2) If the defendant intends to introduce expert testimony relating to mental disease or defect on the issue whether he had the requisite mental state, he must notify the prosecution in writing. (3) The court, on motion of the prosecution, may order the defendant to submit to a psychiatric examination by a court-appointed psychiatrist. (4) If the defendant fails to undergo the court-ordered psychiatric examination, the court may exclude any expert witness the defendant offers on the issue of his mental state.

B. Committee Action. The Committee agrees with the proposed rule but has added language concerning the use of statements made to the psychiatrist during the course of a psychiatric examination provided for by Rule 12.2. The language provides:

No statement made by the accused in the course of any examination provided for by this rule, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused before the judge who or jury which determines the guilt of the accused, prior to the determination of guilt.

The purpose of this rule is to secure the defendant's fifth amendment right against self-incrimination. See *State v. Raskin*, 34 Wis.2d 607, 150 N.W.2d 318 (1967). The provision is flexible and does not totally preclude the use of such statements. For example, the defendant's statement can be used at a separate determination of the issue of sanity or for sentencing purposes once guilt has been determined. A limiting instruction to the jury in a single trial to consider statements made to the psychiatrist only on the issue of sanity would not satisfy the requirements of the rule as amended. The prejudicial effect on the determination of guilt would be inescapable.

The Committee notes that the rule does not attempt to resolve the issue whether the court can constitutionally compel a defendant to undergo a psychiatric examination when the defendant is unwilling to undergo one. The provisions of subdivision (c) are qualified by the phrase, "In an appropriate case." If the court cannot constitutionally compel an unwilling defendant to undergo a psychiatric examination, then the provisions of subdivision (c) are inapplicable in every instance where the defendant is unwilling to undergo a court-ordered psychiatric examination. The Committee, by its approval of subdivision (c), intends to take no stand whatever on the constitutional question. House Report No. 94-247.

Rule 12.2(c) deals with court-ordered psychiatric examinations. The House version provides that no statement made by a defendant during a court-ordered psychiatric examination could be admitted in evidence against the defendant before the trier of fact that determines the issue of guilt, prior to the determination of guilt. The Senate version deletes this provision.

The Conference adopts a modified House provision and restores to the bill the language of H.R. 6799 as it was originally introduced. The Conference-adopted language provides that no statement made by the defendant during a psychiatric examination provided for by the rule shall be admitted against him on the issue of guilt in any criminal proceeding.

The Conference believes that the provision in H.R. 6799 as originally introduced in the House adequately protects the defendant's fifth amendment right against self-incrimination. The rule does not preclude use of statements made by a defendant during a court-ordered psychiatric examination. The statements may be relevant to the issue of defendant's sanity and admissable on that issue. However, a limiting instruction would not satisfy the rule if a statement is so prejudicial that a limiting instruction would be ineffective. Cf. practice under 18 U.S.C. 4244. House Report No. 94-414.

### 1983 Amendment

Rule 12.2(b). Courts have recently experienced difficulty with the question of what kind of expert testimony offered for what purpose falls within the notice requirement of rule 12.2(b). See, e.g., *United States v. Hill*, 655 F.2d 512 (3d Cir.1980) (rule not applicable to tendered testimony of psychologist concerning defendant's susceptibility of inducement, offered to reinforce defendant's entrapment defense); *United States v. Webb*, 625 F.2d 709 (5th Cir.1980) (rule not applicable to expert testimony tendered to show that defendant lacked the "propensity to commit a violent act," as this testimony was offered "to prove that Webb did not commit the offense charged," shooting at a helicopter, "not that certain conduct was unaccompanied by criminal intent"); *United States v. Perl*, 584 F.2d 1316 (4th Cir.1978) (because entrapment defense properly withheld from jury, it was

---

unnecessary to decide if the district court erred in holding rule applicable to tendered testimony of the doctor that defendant had increased susceptibility to suggestion as a result of medication he was taking; *United States v. Olson*, 576 F.2d 1267 (8th Cir.1978) (rule applicable to tendered testimony of an alcoholism and drug therapist that defendant was not responsible for his actions because of a problem with alcohol); *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977) (rule applicable to tendered testimony of psychologist that defendant, charged with assaulting federal officer, was more likely to hurt himself than to direct his aggressions toward others, as this testimony bears upon whether defendant intended to put victim in apprehension when he picked up the gun).

What these cases illustrate is that expert testimony about defendant's mental condition may be tendered in a wide variety of circumstances well beyond the situation clearly within rule 12.2(b), i.e., where a psychiatrist testifies for the defendant regarding his diminished capacity. In all of these situations and others like them, there is good reason to make applicable the notice provisions of rule 12.2(b). This is because in all circumstances in which the defendant plans to offer expert testimony concerning his mental condition at the time of the crime charged, advance disclosure to the government will serve "to permit adequate pretrial preparation, to prevent surprise at trial, and to avoid the necessity of delays during trial." 2 A.B.A. Standards for Criminal Justice 11-55 (2d 1980). Thus, while the district court in *United States v. Hill*, 481 F.Supp. 568 (E.D.Pa.1979), incorrectly concluded that present rule 12.2(b) covers testimony by a psychologist bearing on the defense of entrapment, the court quite properly concluded that the government would be seriously disadvantaged by lack of notice. This would have meant that the government would not have been equipped to cross-examine the expert, that any expert called by the government would not have had an opportunity to hear the defense expert testify, and that the government would not have had an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony on defendant's claim that he was especially susceptible to inducement. Consequently, rule 12.2(b) has been expanded to cover all of the aforementioned situations.

Rule 12.2(c). The amendment of the first sentence of subdivision (c), recognizing that the government may seek to have defendant subjected to a mental examination by an expert other than a psychiatrist, is prompted by the same considerations discussed above. Because it is possible that the defendant will submit to examination by an expert of his own other than a psychiatrist, it is necessary to recognize that it will sometimes be appropriate for defendant to be examined by a government expert other than a psychiatrist.

The last sentence of subdivision (c) has been amended to more accurately reflect the Fifth Amendment considerations at play in this context. See *Estelle v. Smith*, 451 U.S. 454 l, 101 S.Ct. 1866, 68 L.Ed.2d 359) (1981), holding that self-incrimination protections are not inevitably limited to the guilt phase of a trial and that the privilege, when applicable, protects against use of defendant's statement and also the fruits thereof, including expert testimony based upon defendant's statements to the expert. *Estelle* also intimates that "a defendant can be required to submit to a sanity examination," and, presumably some other form of mental examination, when "his silence may deprive the State of the only

effective means it has of controverting his proof on an issue that he interjected into the case."

Rule 12.2(d). The broader term "mental condition" is appropriate here in light of the above changes to subdivisions (b) and (c).

Rule 12.2(e). New subdivision (e), generally consistent with the protection afforded in rule 12.1(f) with respect to notice of alibi, ensures that the notice required under subdivision (b) will not deprive the defendant of an opportunity later to elect not to utilize any expert testimony. This provision is consistent with *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), holding the privilege against self-incrimination is not violated by requiring the defendant to give notice of a defense where the defendant retains the "unfettered choice" of abandoning the defense.

*Dissenting Statement of Justice O'Connor to 1983 Amendment.* With one minor reservation, I join the Court in its adoption of the proposed amendments. They represent the product of considerable effort by the Advisory Committee, and they will institute desirable reforms. My sole disagreement with the Court's action today lies in its failure to recommend correction of an apparent error in the drafting of Proposed Rule 12.2(e).

As proposed, Rule 12.2(e) reads:

"Evidence of an intention as to which notice was given under subdivision (a) or (b), later withdrawn, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention."

Identical language formerly appeared in Fed.Rules Crim. Proc. 11(e)(6) and Fed.Rules Evid. 410, each of which stated that

"[Certain material] is not admissible in any civil or criminal proceeding against the defendant."

Those rules were amended, Supreme Court Order April 30, 1979, 441 U.S. 970, 987, 1007, Pub.Law 96-42, approved July 31, 1979, 93 Stat. 326. After the amendments, the relevant language read,

"[Certain material] is not, in any civil or criminal proceeding, admissible against the defendant."

As the Advisory Committee explained, this minor change was necessary to eliminate an ambiguity. Before the amendment, the word "against" could be read as referring either to the kind of proceeding in which the evidence was offered or to the purpose for which it was offered. Thus, for instance, if a person was a witness in a suit but not a party, it was unclear whether the evidence could be used to impeach him. In such a case, the *use* would be against the person, but the *proceeding* would not be against him. Similarly, if the person wished to introduce the evidence in a proceeding in which he was the defendant, the use, but not the proceeding, would be against him. To eliminate the ambiguity, the Advisory Committee proposed the amendment clarifying that the evidence was inadmissible against the person, regardless of whether the particular proceeding was against the person. See Adv.Comm. Note to Fed.Rules Crim.Proc. 11(e)(6); Adv. Comm. Note to Fed.Rules Evid. 410.

The same ambiguity inheres in the proposed version of Rule 12.2(e). We should recommend that it be eliminated now. To that extent, I respectfully dissent.

## Rule 12.2

### 1985 Amendment

Subd. (e). This clarifying amendment is intended to serve the same purpose as a comparable change made in 1979 to similar language in Rule 11(e)(6). The change makes it clear that evidence of a withdrawn intent is thereafter inadmissible against the person who gave the notice in any civil or criminal proceeding, without regard to whether the proceeding is against that person.

### 1987 Amendment

The amendments are technical. No substantive change is intended.

### 2002 Amendments

The language of Rule 12.2 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.

The substantive changes to Rule 12.2 are designed to address five issues. First, the amendment clarifies that a court may order a mental examination for a defendant who has indicated an intention to raise a defense of mental condition bearing on the issue of guilt. Second, the defendant is required to give notice of an intent to present expert evidence of the defendant's mental condition during a capital sentencing proceeding. Third, the amendment addresses the ability of the trial court to order a mental examination for a defendant who has given notice of an intent to present evidence of mental condition during capital sentencing proceedings and when the results of that examination may be disclosed. Fourth, the amendment extends the disclosure of the results and reports of the defendant's expert examination. Finally, the amendment extends the sanctions for failure to comply with the rule's requirements to the punishment phase of a capital case.

Under current Rule 12.2(b), a defendant who intends to offer expert testimony on the issue of his or her mental condition on the question of guilt must provide a pretrial notice of that intent. The amendment extends that notice requirement to a defendant who intends to offer expert evidence, testimonial or otherwise, on his or her mental condition during a capital sentencing proceeding. As several courts have recognized, the better practice is to require pretrial notice of that intent so that any mental examinations can be conducted without unnecessarily delaying capital sentencing proceedings. See, e.g., United States v. Beckford, 962 F. Supp. 748, 754–64 (E.D. Va. 1997); United States v. Haworth, 942 F. Supp. 1406, 1409 (D.N.M. 1996). The amendment adopts that view.

Revised Rule 12.2(b)(1) addresses and clarifies the authority of the court to order mental examinations for a defendant—to determine competency of a defendant to stand trial under 18 U.S.C. § 4241; to determine the defendant's sanity at the time of the alleged offense under 18 U.S.C. § 4242; or in those cases where the defendant intends to present expert testimony on his or her mental condition. Rule 12.2(c)(1)(A) reflects the traditional authority of the court to order competency examinations. With regard to examinations to determine insanity at the time of the offense, current Rule 12.2(c) implies that the trial court *may* grant a government motion for a mental examination of a defendant who has indicated

## RULES OF CRIMINAL PROCEDURE

under Rule 12.2(a) an intent to raise the defense of insanity. But the corresponding statute, 18 U.S.C. § 4242, *requires* the court to order an examination if the defendant has provided notice of an intent to raise that defense and the government moves for the examination. Revised Rule 12.2(c)(1)(B) now conforms the rule to § 4242. Any examination conducted on the issue of the insanity defense would thus be conducted in accordance with the procedures set out in that statutory provision.

Revised Rule 12.2(c)(1)(B) also addresses those cases where the defendant is not relying on an insanity defense, but intends to offer expert testimony on his or her mental condition. While the authority of a trial court to order a mental examination of a defendant who has registered an intent to raise the insanity defense seems clear, the authority under the rule to order an examination of a defendant who intends only to present expert testimony on his or her mental condition on the issue of guilt is not as clear. Some courts have concluded that a court may order such an examination. See, e.g., United States v. Stackpole, 811 F.2d 689, 697 (1st Cir. 1987); United States v. Buchbinder, 796 F.2d 910, 915 (1st Cir. 1996); and United States v. Halbert, 712 F.2d 388 (9th Cir. 1983). In United States v. Davis, 93 F.3d 1286 (6th Cir. 1996), however, the court in a detailed analysis of the issue concluded that the district court lacked the authority under the rule to order a mental examination of a defendant who had provided notice of an intent to offer evidence on a defense of diminished capacity. The court noted first that the examination under 18 U.S.C. § 4242, because that provision relates to situations when the defendant intends to rely on the defense of insanity. The court also rejected the argument that the examination could be ordered under Rule 12.2(c) because this was, in the words of the rule, an "appropriate case." The court concluded, however, that the trial court had the inherent authority to order such an examination.

The amendment clarifies that the authority of a court to order a mental examination under Rule 12.2(c)(1)(B) extends to those cases when the defendant has provided notice, under Rule 12.2(b), of an intent to present expert testimony on the defendant's mental condition, either on the merits or at capital sentencing. See, e.g., United States v. Hall, 152 F.3d 381 (5th Cir. 1998), cert. denied, 119 S. Ct. 1767 (1999).

The amendment to Rule 12.2(c)(1) is not intended to affect any statutory or inherent authority a court may have to order other mental examinations.

The amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition (apart from insanity). As currently provided in the rule, if the examination is being ordered in connection with the defendant's stated intent to present an insanity defense, the procedures are dictated by 18 U.S.C. § 4242. On the other hand, if the examination is being ordered in conjunction with a stated intent to present expert testimony on the defendant's mental condition (not amounting to a defense of insanity) either at the guilt or sentencing phases, no specific statutory counterpart is available. Accordingly, the court is given the discretion to specify the procedures to be used. In so doing, the court may certainly be informed by other provisions, which address hearings on a defendant's mental condition. See, e.g., 18 U.S.C. § 4241, et seq.

## ARRAIGNMENT

Rule 12.2(d) has been amended to extend sanctions for failure to comply with the rule to the penalty phase of a capital case. The selection of an appropriate remedy for the failure of a defendant to provide notice or submit to an examination under subdivisions (b) and (c) is entrusted to the discretion of the court. While subdivision (d) recognizes that the court may exclude the evidence of the defendant's own expert in such a situation, the court should also consider "the effectiveness of less severe sanctions, the impact of preclusion on the evidence at trial and the outcome of the case, the extent of prosecutorial surprise or prejudice, and whether the violation was willful." *Taylor v. Illinois*, 484 U.S. 400, 414 n.19 (1988) (citing *Fendler v. Goldsmith*, 728 F.2d 1181 (9th Cir. 1983)).

## HISTORICAL NOTES

### Effective and Applicability Provisions

1984 Acts. Section 11(c) of Pub.L. 98-596 provided that: "The amendments and repeals made by subsections (a) and (b) of this section [amending this rule] shall apply on and after the enactment of the joint resolution entitled 'Joint resolution making continuing appropriations for the fiscal year 1985, and for other purposes'. H.J.Res. 648, Ninety-eighth Congress [Pub.L. 98-473, Oct. 12, 1984]."

1975 Acts. This rule, and the amendments of this rule made by section 3 of Pub.L. 94-64, effective Dec. 1, 1975, pursuant to section 2 of Pub.L. 94-64.

## Rule 12.3. Notice of a Public-Authority Defense

### (a) Notice of the Defense and Disclosure of Witnesses.

**(1) Notice in General.** If a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion, or at any later time the court sets. The notice filed with the clerk must be under seal if the notice identifies a federal intelligence agency as the source of public authority.

**(2) Contents of Notice.** The notice must contain the following information:

**(A)** the law enforcement agency or federal intelligence agency involved;

**(B)** the agency member on whose behalf the defendant claims to have acted; and

**(C)** the time during which the defendant claims to have acted with public authority.

**(3) Response to the Notice.** An attorney for the government must serve a written response on the defendant or the defendant's attorney within 10 days after receiving the defendant's notice, but no later than 20 days before trial. The response must admit or deny that the defendant exercised the public authority identified in the defendant's notice.